# EXHIBIT 1

| ~~HAMILTON~~ County | **STATE OF TENNESSEE** **CIVIL SUMMONS** page 1 of 1 | Case Number 19C669 |

THOMAS C / Sue M Wigston Vs. _____

Served On:
CANDY KEEN-FULLER 200 E. MAIN St. Easley, SC 29640

19 2816

You are hereby summoned to defend a civil action filed against you in _____ Court, _____ County, Tennessee.
Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: June 6, 2019

_____
Clerk / Deputy Clerk
H. Novkov

Attorney for Plaintiff: ___John B. Veach III___
20 CEDAR CLIFF RD Asheville NC 28803

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____ County

## CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____      _____
Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____
_____

Date: _____      By: _____
Please Print: Officer, Title

_____
Agency Address      Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____      _____
Notary Public / Deputy Clerk (Comm. Expires _____)

_____      _____
Signature of Plaintiff      Plaintiff's Attorney (or Person Authorized to Serve Process)
(Attach return receipt on back)

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____.*

*Rev. 03/11*

# STATE OF TENNESSEE
## CIVIL SUMMONS
page 1 of 1

Case Number

19C669

19 2817

THOMAS C./Sue M. Wigston _____ Vs. _____

**Served On:**

UpState Law GroupLLC 200 E. Main St. Easley, SC 8640

You are hereby summoned to defend a civil action filed against you in _____ Court, _____ County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: June 6, 2019 _____

_____
Clerk / Deputy Clerk

Attorney for Plaintiff: John B. Veach III
20 Cedar Cliff Rd Asheville NC 28803

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you should have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to _____, _____ Clerk, _____ County
_____

### CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

_____
Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____
_____

Date: _____

By: _____
Please Print: Officer, Title

_____
Agency Address

_____
Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

_____
Notary Public / Deputy Clerk (Comm. Expires _____ )

_____
Signature of Plaintiff

_____
Plaintiff's Attorney (or Person Authorized to Serve Process)
**(Attach return receipt on back)**

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____.*

Rev. 03/11

IN THE CIRCUIT COURT FOR HAMILTON COUNTY, TENNESSEE
FOR THE ELEVENTH JUDICIAL DISTRICT AT CHATANOOGA

| | | |
|---|---|---|
| THOMAS C. AND SUE M. WINSTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 19C669 |
| | ) | |
| RICHARD ZAEHRINGER, | ) | JURY TRIAL REQUESTED |
| individually and as agent for | ) | |
| Annuity FYI, ANNUITY FYI, DAVID | ) | |
| WOODARD, individually and as | ) | |
| Owner of Performance Arbitrage, | ) | |
| And Financial Products | ) | COMPLAINT |
| Distributors, PERFOMANCE | ) | |
| ARBITRAGE, FINANCIAL | ) | JURY TRIAL REQUESTED |
| PRODUCTS DISTRIBUTORS, KATE | ) | |
| SYNDER and MICHELLE PLANT, | ) | |
| individually and as owners of Life | ) | |
| Funding Options, LIFE FUNDING, | ) | |
| OPTIONS, ANDREW GAMBER, | ) | |
| individually and as owner of SoBell | ) | |
| Ridge Corp., SOBELL RIDGE, | ) | |
| CORP., CANDY KERN-FULLER, and | ) | |
| UPSTATE LAW GROUP, LCC | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

### I. INTRODUCTION

1.     During the period 2016 through 2017, plaintiffs Thomas and Sue Winston invested $485,000 in annuities and federal pensions through defendants.    Defendants misrepresented the investment products to plaintiffs and omitted to provide material information concerning the

investment products to the Winstons. Defendants' misrepresentations of the unregistered investment products and the unregistered sellers of the products to the Winstons and defendants' omissions of material information constituted gross negligence, fraud and violations of the Tennessee Securities Act.

2.     All but one of the investments that the Winstons purchased from defendants are now in default. The Winstons have been damaged by defendants' actions in an amount in excess of $500,000.

## II. **PARTIES**

3.     Plaintiffs Thomas and Sue Winston are residents of Chattanooga, Hamilton County, Tennessee.

4.     Defendant, Richard Zaehringer was at the time of the sale of the investment products to the Winstons working at the principle place of business of Annuity FYI, located at 424 Church Street, Suite 2000, Nashville, Tennessee, 37219. His current address is 34170 No. Lakeside Drive, Grayslake, Illinois, 60030-1020.

5.     Defendant Annuity FYI principle place of business is located at 1165 NE 105 Street, Miami Shores, Florida, 33128-2126.

6.     Defendant David Woodard is a resident of 1250 S. Capital of TX Highway, Building 3, Suite 400, Austin, Texas, 78746.

7.     Defendant Performance Arbitrage Company, Inc. has represented that it is located at 232 Market Street, Flowood, Mississippi

2

39232. Among other websites, Performance Arbitrage promotes itself on http://mypaconline.com.

8. Defendant Financial Products Distributors is, on information and belief, located at 232 Market Street, Flowood, Mississippi 39232.

9. Defendants Kate Synder and Michelle Plant are the owners and managers of Life Funding Options. On information and belief, they are or were affiliated with Woodard. They may be served with process at the company's principle place of business located at 128 Millport Circle, Suite 200, Greenville, South Carolina, 29607.

10. Defendant Life Funding Options' principle place of business is located at Millport Circle, Suite 200, Greenville, South Carolina, 29607.

11. Defendant Andrew Gamber is a resident of Arkansas and reportedly resides at 742 County Road 464, Jonesboro, Arkansas. He also reportedly has maintained an office at 1000 Highland Colony Park, Suite 5203, Ridgeland, MS 39157, i.e., the same address as Defendant SoBell. That address is, in fact, actually a convenience address operated by Regus Offices. On information and belief, Gamber is an investor in or effectively controls SoBell and is a director or officer of SoBell.

12. Defendant SoBell Ridge Corp. is (or was) a Mississippi for-profit corporation, with its principal address being 1000 Highland Colony Park, Suite 5203, Ridgeland, Mississippi, 39157. On information and belief, Gamber is the sole incorporator of SoBell. David Woodard was the Director

3

of Marketing for SoBell. SoBell was the predecessor to Financial Products Distributors.

13. Defendant Candy Kern-Fuller is a resident and citizen of the State of South Carolina. She is an attorney and partner in Upstate Law Group, LLC. She is the registered agent for service of process for Life Funding Options.

14. Defendant Upstate Law Group, LLC is a law firm located at 200 East Main Street, Easley, SC 29640. Upstate Law Group has maintained one or more IOLTA accounts at institutions such as SunTrust Bank N.A. and Community 1st Bank through which the payments to and from the defendants flow in connection with the pension scam described below. Kern-Fuller and Upstate have acted as a key conduit in the scam through their law firm IOLTA account, which effectively has acted as the central bank for the schemes. In addition, Kern-Fuller and Upstate (1) reviewed and assisted veterans in obtaining identity and financial verification documents; (2) received authorization from veterans to make inquiries of the Veterans Administration to confirm the veteran's income and other matters associated with the scheme; (3) facilitated the execution of the contracts; (4) provided "escrow" services for the persons who buy the veterans' loans; (5) sued allegedly defaulting veterans in an effort to enforce the agreements; and (6) opposed attempts to discharge such debt through bankruptcy.

4

## III. JURISDICTION

15.     This Court has subject matter jurisdiction over this civil action because plaintiffs' claims under the federal Securities Act of 1933 provide a long arm statute, and because the acts complained of occurred in Hamilton County.  The amount in controversy is well in excess of $500,000.

16.     Venue is proper in this Court because a substantial portion of the events, acts and omissions giving rise to the claims addressed in this Complaint took place in this District.

## IV.  FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

17.     Thomas C. Winston and his wife Sue have been married for 54 years; they have 3 children and 5 grandchildren.  Mr. Winston graduated from Memphis State University and received a Masters of Hospital Administration from Washington University in 1967.  He has worked in hospital administration for his entire business career.

18.     In May 2015 Mr. Winston began looking for possible investments to replace his and his wife's MetLife long term annuities, which Mr. Winston felt had unacceptably high fees.  Following an internet search, Mr. Winston contacted Annuity FYI based on the information provided on the company's web page.

19.     Mr. Winston was quickly contacted by Richard Zaehringer, who identified himself as an agent and employee of Annuity FYI.  Zaehringer met with Mr. and Mrs. Winston at their home on May 14, 2015.

5

20.     Zaehringer subsequently recommended that Mr. and Mrs. Winston sell their MetLife annuities.     Zaehringer sent several emails discussing what he suggested were excessive fees charged by MetLife and outlining what he claimed were untruthful and incorrect positions taken by the MetLife agent.

21.     On May 28, 2015 Zaehringer sent Mr. and Mrs. Winston an email in which Zaehringer pledged that "the rewards you and Sue will reap (by buying annuities from me) are piece of mind, not just monetary savings in fee reduction, safety of principle and income doubling to maintain your quality of care."

22.     Zaehringer recommended that Mr. and Mrs. Winston each purchase an American Equity annuity providing an 8% payment per year, and a Symetra annuity paying 4.85% per year.

23.     Over the course of the next several months, Mr. Winston had numerous communications with Zaehringer concerning different annuities and other types of investments, and different projections for monthly payments.  In July 2015, Mr. and Mrs. Winston decided to sell their MetLife annuities and purchase one of the two annuities (one each) that Zaehringer had initially recommended, American Equity.  Mr. Winston thought that the purchases would be made through Zaehringer and Annuity FYI.

24.     Sometime around November 2015 Mr. Winston was informed that the American Equity contracts had not gone through because the paperwork supplied by the Winstons was not satisfactory.  This didn't make

6

sense to Mr. Winston since he had supplied all the paperwork requested to Zaehringer. Nevertheless, Zaehringer immediately started discussing an alternative investment for the Winstons that Zaehringer said would provide a greater return, which he called federal pension annuities.

25.     Zaehringer explained the federal pensions to Mr. Winston as follows: "An individual who receives a federal pension, typically a military pension, would rather have a lump sum rather than the monthly stream of income. We have an exclusive contract to find an individual who needs income stream in exchange for a lump sum and essentially match up needs. Those individuals who own the pensions are only allowed to "sell" a maximum of ten years of pension payments. The federal government backs the pension, not an insurance company. For added protection for the purchaser, there is a life insurance [policy] on those individuals selling part of their pension to cover the purchaser should the seller die during the payout."

26.     Zaehringer told Mr. Winston that David Woodard, Director of Marketing for SoBell, was "the person who handles the [federal pensions] transactions daily." Zaehringer also told Mr. Winston that "as a planning firm we have placed several million dollars in this [federal pension] plan and have never had an issue." On information and belief, defendant Andrew Gamber is or was, at all relevant times, an investor in or effectively controlled, SoBell, and is or was a director or officer of SoBell. SoBell was,

7

on information and belief, the predecessor in interest to Financial Product Distributors.

27.     Based on Zaehringer recommendations and assurance the Winstons bought two federal pension contracts (one each) through SoBell in December 2015 and early January 2016.   Goldstar Trust was the designated Trustee and Upstate Law Group was the escrow agent.

28.     Based on Zaehringer's recommendation, acting as an agent for SMA Hub, an Oregon company specializing in secondary mortgages, the Winstons also purchased two Symetra Life Insurance Company secondary annuity contracts with Goldstar Trust again serving as Trustee.

29.     Sometime around the Spring of 2016, Zaehringer started talking to Mr. Winston about selling the two Symetra secondary annuities and buying more federal pension annuities (Zaehringer's description).   In an email dated July 19, 2016 Zaehringer stated that "If there is a default, you are not going to lose any principal or interest."

30.     In and around August 2016 the two Symetra contracts were sold, and additional federal pension "annuities" (which Zaehringer said were risk free because the principal and interest were guaranteed by the federal   government)   were   purchased   through   Financial   Products Distributors and Performance Arbitrage.   Upstate Law Group was the escrow agent.

31.     On information and belief Financial Products Distributors was the successor to SoBell, and was owned by either Gamber or Woodard or

8

both.   To the best of his recollection and belief, sometime around the purchase of the pension annuities, Mr. and Mrs. Winston's accounts were moved from Annuity FYI to Performance Arbitrage, which was also owned by David Woodard.

32.   All of the defendants involved in these transactions violated the Federal Anti-Assignment Acts, including Sections 38 U.S.C. § 5301(a) and 37 U.S.C. § 701.

33.   In May 2017, Mr. Winston told Zaehringer that one of Sue Winston's pension contracts was in default.   Zaehringer and Woodard both told Mr. Winston not to worry about it.   It would be taken care of.

34.   During this time Zaehringer continue to repeat what he had told Mr. Winston repeatedly, that "the Buyer is protected from all of these risks, both those known and unknown" . . . that "Upstate Law Group . . . will monitor for receipt of payments and inform Zaehringer's firm as the Distributor, Performance Arbitrage Company, and the Buyer if a payment is received."

35.   In July 2017 Performance Arbitrage bought the contract that was in default in Sue Winston's account and issued her a Promissory Note, which would was to pay approximately 80% of the monthly contracted payment, and Performance Arbitrage also pledged to pay an additional $229 a month to maintain the full contracted monthly  payment amount.

36.   In November 2017 Mr. Winston first learned that sometime around April 2017 Life Funding Options had purchased or absorbed

9

Performance Arbitrage and shortly thereafter suspended November, December and January payments. In early December Mr. Winston sent emails to David Woodard and Life Funding Options stating that Life Funding Options had no authority to withhold payments. Mr. Winston then demanded that Life Funding Options sell all of Sue and Tom Winston's contracts.

37.  On December 11, 2017 Life Funding Options sent Mr. Winston an email telling him that there was not a secondary market for their contracts. Zaehringer had repeatedly told Mr. Winston that there was a secondary market for their contracts.

38.  On December 12, Zaehringer told Mr. Winston to call Upstate Law Group, Performance Arbitrage and Financial Products about the defaulted payments, effectively trying to remove himself and Annuity FYI from representing the Winstons. Zaehringer told Mr. Winston that David Woodard and Upstate Law Group were not talking to him.

39.  On December 13, Upstate Law Group sent Mr. Winston an email stating that Zaehringer was lying, that he knew full well why Life Funding Options was doing what they were doing in withholding payments, i.e. that the pensioners themselves had defaulted on the contracts. Upstate Law Group further declared that the Winstons had accepted the risks with the structured settlement contracts.

40.  On December 14, 2017, Zaehringer again stated to Mr. Winston that federal funds due under the contracts go directly to the escrow agent,

10

just as he had prior to the original sale of these products. Zaehringer reaffirmed this position and said that the pensioner "sellers" were supposed to be out of the equation after the sale of his/her pension to the buyer, in this case the Winstons. Zaehringer was told this by Woodard, who provided training to Zaehringer with respect to these products.

41. Life Funding Options made sporadic payments on the Winstons' contracts through August 1, 2018. In February 2019 Life Funding Options suspended operations and payments on the IRA Services accounts "due to the actions of the Consumer Protection Bureau and the South Carolina Department of Consumer Affairs. Life Funding Options also denied accountability on the Goldstar accounts.

42. On information and belief, Ms. Kern-Fuller and Upstate Law Group have used their firm's IOLTA account as the conduit through which the other defendants channel their monies in connection with the schemes described above. Without limiting the generality of the foregoing, the investors have made their lump sum deposits into this IOLTA account and, under the direction of Ms. Kern- Fuller and Upstate Law Group, the funds were then dispersed to the veterans and to one or more of the Defendants. Ms. Kern-Fuller and Upstate Law Group also have received the veterans' monthly payments directly from the Veterans Administration and sent each veteran the remainder of the benefit payment, after deducting the veteran's loan repayment amount.

45. Collectively, the defendants maintain a network of web sites

11

designed to attract financially desperate veterans seeking a source of ready cash. The defendants promised veterans that they will find buyers, like the Winstons, to purchase the stream of the veteran's pension income.

46. None of the documents or other disclosures made to the Winstons discloses that these transactions are prohibited and void under the Federal Anti-Assignment Acts, nor do they reveal the multiple lawsuits and regulatory actions taken against the defendants by the states of Mississippi, Texas, Pennsylvania, New Mexico, California and Arkansas.

47. On information and belief, the defendants here extracted substantial "commissions" in connection with the Winstons' structured products without disclosing this fact to the Winstons or the veterans.

48. On information and belief, none of the defendants were, at any time relevant to plaintiffs' claims, registered to sell securities in Tennessee. Furthermore, the federal pension contracts recommended and sold to the Winstons were not registered to be sold in Tennessee as securities.

## V. LEGAL CLAIMS

### COUNT ONE – VIOLATION OF TENNESSEE SECURITIES ACT

49. Plaintiffs incorporate herein all paragraphs above.

50. In connection with the offer and sale of securities, defendants intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material

12

information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of the Tennessee Securities Act, T.C.A. § 48-2-121, and actionable under T.C.A. § 48-2-122.

51.     Plaintiffs reasonably relied on defendants' representations and were unaware of the true facts.

52.     Plaintiffs have been damaged as a result of defendants' misconduct.

53.     Defendant Gamber is liable under § 48-2-122(g) for his own misrepresentations and omissions and is liable for the securities law violations of SoBell and Financial Products Distributors because defendant Gamber had the power, directly or indirectly, to control the activities of SoBell and Financial Products Distributors.

54.     Defendant SoBell is also liable for the securities law violations of Gamber, Woodard and Zaehringer pursuant to the doctrine of *respondeat superior* because Gamber, Woodard and Zaehringer were agents of SoBell.

55.     Defendant Zaehringer is liable under § 48-2-122(g) for his misrepresentations and omissions. Annuity FYI because defendant Zaehringer had the power, directly or indirectly, to control the activities of Annuity FYI.

56.     Defendant Annuity FYI is liable under § 48-2-122(g) for its misrepresentations and omissions, is liable for the securities law violations of Zaehringer, and is also liable for Zaehringer's actions pursuant to the

13

doctrine of *respondeat superior* because Zaehringer was an agent and employee of Annuity FYI.

57.     Defendant David Woodard is liable under § 48-2-122(g) for his own misrepresentations and omissions and is liable for the securities law violations of SoBell, Performance Arbitrage, Financial Products Distributors and, on information and belief, Life Funding Options, because defendant had the power, directly or indirectly, to control the activities of SoBell, Performance Arbitrage, Financial Products Distributors and Life Funding Options.

58.     Defendant Performance Arbitrage is liable under § 48-2-122(g) for its own misrepresentations and omissions and is also liable for the securities law violations of Woodard and Zaehringer pursuant to the doctrine of *respondeat superior* because Woodard and Zaehringer were agents of Performance Arbitrage.

59.     Kate Synder and Michelle Plant are liable under § 48-2-122(g) for the securities law violations of Life Funding Options because defendants Synder and Plant had the power, directly or indirectly, to control the activities of Life Funding Options.

60.     Defendant Life Funding Options is liable under § 48-2-122(g) for its own misrepresentations and omissions and for the security law violations of Performance Arbitrage because LFO purchased Performance Arbitrage and assumed liability for all of Performance Arbitrage's actions.

14

60.     Defendant Candy Kern-Fuller is liable under § 48-2-122(g) for her own misrepresentations and omissions and is liable for the securities law violations of defendant Upstate Law Group as a partner.

61.     Defendant Upstate Law Group is liable under § 48-2-122(g) for its own misrepresentations and omissions, is liable for the security law violations of the other defendants because Upstate Law Group aided and abetted the security law violations of the other defendants, and is liable for the securities law violations of Candy Kern-Fuller.

62.     Pursuant to T.C.A. § 48-2-122, plaintiffs are entitled to recover from defendants the losses plaintiffs have sustained and will sustain, interest, and attorney's fees.

## COUNT TWO – VIOLATION OF SECTION 12 OF SECURITIES ACT

63.     Plaintiffs incorporate by reference all paragraphs above.

64.     This Count is brought pursuant to § 12a(2) of the Securities Act, 15 U.S.C. § 77$l$, by the Winstons against all defendants.

65.     Defendants were sellers, offerors, and/or solicitors with respect to the federal pension investments sold to the plaintiffs.

66.     Defendants were not registered to sell the federal pension investments to the Winstons.   The federal pension securities were not registered to be sold in Tennessee.

67.     The individual defendants participated in the preparation of the documents used to sell the federal pension investments.

15

68. The documents by which the federal pension investments were offered to plaintiffs and others were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

69. Defendants were aware of the misleading nature of the documents used to sell the federal pension investments.

70. Through the conduct alleged above, defendants violated, are liable under, or controlled a party who is liable under §12a(2) of the Securities Act.

71. Plaintiffs have been damaged and are entitled to all relief from defendants permitted by § 12a(2) of the Securities Act. The Winstons hereby tender the investments to defendants.

72. At the times the Winstons purchased the federal pension investments, they did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set forth above. Less than one year has elapsed from the time that plaintiffs discovered, and could reasonably have discovered, the misconduct giving rise to this case.

**COUNT THREE – VIOLATION OF SECTION 15 OF SECURITIES ACT**

73. Plaintiffs incorporate by reference all paragraphs above.

74. This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o, by the Winstons against Zaehringer, Woodard, Synder, Plant, Gamber and Kern-Fuller.

16

75.     Defendants were control persons of Annuity FYI, Performance Arbitrage, Financial Products Distributors, Life Funding Options, SoBell Ridge, and Upstate Law Group. by virtue of their positions as directors or senior officers of these entities and/or by virtue of their relationships with the entities.  These defendants exercised control over the general affairs of these entities and had the power to control the conduct giving rise to plaintiffs' claims.

76.     Defendants are therefore liable for the Securities Act violations alleged in Count Two above.

## COUNT FOUR – GROSS NEGLIGENCE

77.     Plaintiffs incorporate herein all paragraphs above.

78.     Defendants' actions as set forth above constituted gross negligence.  Defendants' negligence was the proximate cause of the losses sustained by the plaintiffs.

79.     Plaintiffs are therefore entitled to judgment against defendants in the amount of all of plaintiffs' losses, plus prejudgment and post-judgment interest.

80.     Because defendants conduct rose to the level of a conscious disregard of the rights of plaintiffs, plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

## COUNT FIVE – COMMON LAW FRAUD

81.     Plaintiffs incorporate herein all paragraphs above.

17

75.     Defendants were control persons of Annuity FYI, Performance Arbitrage, Financial Products Distributors, Life Funding Options, SoBell Ridge, and Upstate Law Group. by virtue of their positions as directors or senior officers of these entities and/or by virtue of their relationships with the entities.  These defendants exercised control over the general affairs of these entities and had the power to control the conduct giving rise to plaintiffs' claims.

76.     Defendants are therefore liable for the Securities Act violations alleged in Count Two above.

## COUNT FOUR – GROSS NEGLIGENCE

77.     Plaintiffs incorporate herein all paragraphs above.

78.     Defendants' actions as set forth above constituted gross negligence.  Defendants' negligence was the proximate cause of the losses sustained by the plaintiffs.

79.     Plaintiffs are therefore entitled to judgment against defendants in the amount of all of plaintiffs' losses, plus prejudgment and post-judgment interest.

80.     Because defendants conduct rose to the level of a conscious disregard of the rights of plaintiffs, plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

17

## COUNT FIVE – COMMON LAW FRAUD

81.    Plaintiffs incorporate herein all paragraphs above.

82.    In connection with their dealings with plaintiffs, defendants intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of Tennessee's common law of fraud.

83.    Plaintiffs reasonably relied on defendants' representations and were unaware of the true facts.

84.    Plaintiffs have been damaged as a result of defendants' misconduct.

85.    Defendant Gamber is liable for his own misrepresentations and omissions and is liable for the misrepresentations and omissions of SoBell because defendant Gamber had the power, directly or indirectly, to control the activities of SoBell and Financial Products Distributors.

85.    Defendant SoBell is liable for the companies' own misrepresentations and omissions and for those of Gamber, Woodard and Zaehringer pursuant to the doctrine of *respondeat superior* because Gamber, Woodard and Zaehringer were agents of SoBell.

86.    Defendant Zaehringer is liable for his own misrepresentations and omissions.

18

87. Defendant Annuity FYI is liable for the companies' own misrepresentations and omissions is also liable for the misrepresentations of Zaehringer pursuant to the doctrine of *respondeat superior* because Zaehringer was an agent of Annuity FYI.

88. Defendant David Woodard is liable for his own misrepresentations and omissions and for the misrepresentations of SoBell, Performance Arbitrage, Financial Products Distributors and, on information and belief, Life Funding Options because defendant had the power, directly or indirectly, to control the activities of Performance Arbitrage and Life Funding Options.

89. Defendant Performance Arbitrage is liable for the securities law violations of Woodard pursuant to the doctrine of *respondeat superior* because Woodard was an agent of Performance Arbitrage.

90. Defendants Kate Synder and Michelle Plant are liable for the misrepresentations of Performance Arbitrage and Life Funding Options because defendants had the power, directly or indirectly, to control the activities of Life Funding Options, which purchased Performance Arbitrage.

91. Defendant Life Funding Options is liable for the fraud of Performance Arbitrage because LFO purchased Performance Arbitrage and assumed liability for all of Performance Arbitrage's actions.

92. Plaintiffs are entitled to recover from defendants' compensation for all plaintiffs' losses, plus interest.

19

93.    Plaintiffs are also entitled to recover punitive damages because of defendants' willful fraud and misconduct.

## COUNT SIX – CIVIL CONSPIRACY

94.    Plaintiffs incorporate herein all paragraphs above.

95.    The Defendants engaged in a civil conspiracy to defraud the Winstons.    Defendants activities reflect the joint assent of two or more parties in furtherance of an unlawful enterprise.

96.    Gamber (and his entities), Woodard (and his entities), Zaehringer (and his entities), Kate Synder and Michell Plant (and their entities), Ms. Kern-Fuller (and her firm), and Zaehringer and Annuit FYI have all conspired in an effort to defraud the Winstons.    The primary purpose of the combinations of these defendants was to injure and defraud the Winstons.

97.    Because the sales of the federal pensions were illegal under the anti-assignment acts, the sales were void ab initio and defendants should be required to rescind plaintiffs' payments for the federal pension contracts, plus interest.

THEREFORE, plaintiffs respectfully request that the Court:

(a)    Award judgment in favor of plaintiffs and against defendants for all losses incurred by plaintiffs as a result of the misconduct set forth above.

20

(b)     Award prejudgment interest and attorneys' fees in favor of each

plaintiffs.

(c)     Award plaintiffs punitive damages.

(d)     Afford plaintiffs a trial by jury.

(e)     Provide such relief as the Court deems to be just and proper.


Respectfully submitted,


John B. Veach III, BPR #8994
FALLS & VEACH
20 Cedarcliff Road
Asheville, NC 28803
828.277.6001
Attorneys for Plaintiffs


21

# EXHIBIT 2

IN THE CIRCUIT COURT FOR HAMILTON COUNTY, TENNESSEE
FOR THE ELEVENTH JUDICIAL DISTRICT AT CHATANOOGA

THOMAS C. AND SUE M. WINSTON,)
Individually and as owners of the )
Thomas Winston IRA R100610337 )
and the Sue Winston IRA )
R1000610340 respectively, )
                           )
     Plaintiffs, )
                           )
v.                           )     Case No.:19C669
                           )
RICHARD ZAEHRINGER, )     JURY TRIAL REQUESTED
individually and as agent for )
Annuity FYI, ANNUITY FYI, DAVID )
WOODARD, individually and as )
Owner of Performance Arbitrage, )
And Financial Products )
Distributors, PERFOMANCE )
ARBITRAGE, FINANCIAL )
PRODUCTS DISTRIBUTORS, KATE )
SYNDER and MICHELLE PLANT, )
individually and as owners of Life )
Funding Options, LIFE FUNDING, )
OPTIONS, ANDREW GAMBER, )
individually and as owner of SoBell )
Ridge Corp., SOBELL RIDGE, )
CORP., CANDY KERN-FULLER, and )
 UPSTATE LAW GROUP, LCC )
     Defendants. )

---

## FIRST AMENDED COMPLAINT

---

## I. **INTRODUCTION**

    1.    During the period 2016 through 2017, plaintiffs Thomas and

Sue Winston invested $485,000 in annuities and federal pensions through

defendants. Defendants misrepresented the investment products to plaintiffs and omitted to provide material information concerning the investment products to the Winstons. Defendants' misrepresentations of the unregistered investment products and the unregistered sellers of the products to the Winstons and defendants' omissions of material information constituted gross negligence, fraud and violations of the Tennessee Securities Act.

2.     All but one of the investments that the Winstons purchased from defendants are now in default. The Winstons have been damaged by defendants' actions in an amount in excess of $500,000.

## II. **PARTIES**

3.     Plaintiffs Thomas and Sue Winston are residents of Chattanooga, Hamilton County, Tennessee. There investments were made through their IRAs, the Thomas Winston IRA R100610337 and the Sue Winston IRA R1000610340.

4.     Defendant, Richard Zaehringer was at the time of the sale of the investment products to the Winstons working at the principle place of business of Annuity FYI, located at 424 Church Street, Suite 2000, Nashville, Tennessee, 37219. His current address is 34170 No. Lakeside Drive, Grayslake, Illinois, 60030-1020.

5.     Defendant Annuity FYI principle place of business is located at 1165 NE 105 Street, Miami Shores, Florida, 33128-2126.

6. Defendant David Woodard is a resident of 1250 S. Capital of TX Highway, Building 3, Suite 400, Austin, Texas, 78746.

7. Defendant Performance Arbitrage Company, Inc. has represented that it is located at 232 Market Street, Flowood, Mississippi 39232. Among other websites, Performance Arbitrage promotes itself on http://mypaconline.com.

8. Defendant Financial Products Distributors is, on information and belief, located at 232 Market Street, Flowood, Mississippi 39232.

9. Defendants Kate Synder and Michelle Plant are the owners and managers of Life Funding Options. On information and belief, they are or were affiliated with Woodard. They may be served with process at the company's principle place of business located at 128 Millport Circle, Suite 200, Greenville, South Carolina, 29607.

10. Defendant Life Funding Options' principle place of business is located at Millport Circle, Suite 200, Greenville, South Carolina, 29607.

11. Defendant Andrew Gamber is a resident of Arkansas and reportedly resides at 742 County Road 464, Jonesboro, Arkansas. He also reportedly has maintained an office at 1000 Highland Colony Park, Suite 5203, Ridgeland, MS 39157, i.e., the same address as Defendant SoBell. That address is, in fact, actually a convenience address operated by Regus Offices. On information and belief, Gamber is an investor in or effectively controls SoBell and is a director or officer of SoBell.

12.    Defendant SoBell Ridge Corp. is (or was) a Mississippi for-profit corporation, with its principal address being 1000 Highland Colony Park, Suite 5203, Ridgeland, Mississippi, 39157.    On information and belief, Gamber is the sole incorporator of SoBell.  David Woodard was the Director of Marketing for SoBell.  SoBell was the predecessor to Financial Products Distributors.

13.    Defendant Candy Kern-Fuller is a resident and citizen of the State of South Carolina.  She is an attorney and partner in Upstate Law Group, LLC.  She is the registered agent for service of process for Life Funding Options.

14.    Defendant Upstate Law Group, LLC is a law firm located at 200 East Main Street, Easley, SC 29640.  Upstate Law Group has maintained one or more IOLTA accounts at institutions such as SunTrust Bank N.A. and Community 1st Bank through which the payments to and from the defendants flow in connection with the pension scam described below. Kern-Fuller and Upstate have acted as a key conduit in the scam through their law firm IOLTA account, which effectively has acted as the central bank for the schemes.  In addition, Kern-Fuller and Upstate (1) reviewed and assisted veterans in obtaining identity and financial verification documents; (2) received authorization from veterans to make inquiries of the Veterans Administration to confirm the veteran's income and other matters associated with the scheme; (3) facilitated the execution of the contracts; (4) provided "escrow" services for the persons who buy the

4

veterans' loans; (5) sued allegedly defaulting veterans in an effort to enforce the agreements; and (6) opposed attempts to discharge such debt through bankruptcy.

## III. <u>JURISDICTION</u>

15.     This Court has subject matter jurisdiction over this civil action because plaintiffs' claims under the federal Securities Act of 1933 provide a long arm statute, and because the acts complained of occurred in Hamilton County.  The amount in controversy is well in excess of $500,000.

16.     Venue is proper in this Court because a substantial portion of the events, acts and omissions giving rise to the claims addressed in this Complaint took place in this District.

## IV. <u>FACTS GIVING RISE TO PLAINTIFFS' CLAIMS</u>

17.     Thomas C. Winston and his wife Sue have been married for 54 years; they have 3 children and 5 grandchildren.  Mr. Winston graduated from Memphis State University and received a Masters of Hospital Administration from Washington University in 1967.  He has worked in hospital administration for his entire business career.

18.     In May 2015 Mr. Winston began looking for possible investments to replace his and his wife's MetLife long term annuities, which Mr. Winston felt had unacceptably high fees.  Following an internet search,

5

Mr. Winston contacted Annuity FYI based on the information provided on the company's web page.

19.    Mr. Winston was quickly contacted by Richard Zaehringer, who identified himself as an agent and employee of Annuity FYI. Zaehringer met with Mr. and Mrs. Winston at their home on May 14, 2015.

20.    Zaehringer subsequently recommended that Mr. and Mrs. Winston sell their MetLife annuities. Zaehringer sent several emails discussing what he suggested were excessive fees charged by MetLife and outlining what he claimed were untruthful and incorrect positions taken by the MetLife agent.

21.    On May 28, 2015 Zaehringer sent Mr. and Mrs. Winston an email in which Zaehringer pledged that "the rewards you and Sue will reap (by buying annuities from me) are piece of mind, not just monetary savings in fee reduction, safety of principle and income doubling to maintain your quality of care."

22.    Zaehringer recommended that Mr. and Mrs. Winston each purchase an American Equity annuity providing an 8% payment per year, and a Symetra annuity paying 4.85% per year.

23.    Over the course of the next several months, Mr. Winston had numerous communications with Zaehringer concerning different annuities and other types of investments, and different projections for monthly payments. In July 2015, Mr. and Mrs. Winston decided to sell their MetLife annuities and purchase one of the two annuities (one each) that Zaehringer

had initially recommended, American Equity. Mr. Winston thought that the purchases would be made through Zaehringer and Annuity FYI.

24.     Sometime around November 2015 Mr. Winston was informed that the American Equity contracts had not gone through because the paperwork supplied by the Winstons was not satisfactory. This didn't make sense to Mr. Winston since he had supplied all the paperwork requested to Zaehringer. Nevertheless, Zaehringer immediately started discussing an alternative investment for the Winstons that Zaehringer said would provide a greater return, which he called federal pension annuities.

25.     Zaehringer explained the federal pensions to Mr. Winston as follows: "An individual who receives a federal pension, typically a military pension, would rather have a lump sum rather than the monthly stream of income. We have an exclusive contract to find an individual who needs income stream in exchange for a lump sum and essentially match up needs. Those individuals who own the pensions are only allowed to "sell" a maximum of ten years of pension payments. The federal government backs the pension, not an insurance company. For added protection for the purchaser, there is a life insurance [policy] on those individuals selling part of their pension to cover the purchaser should the seller die during the payout."

26.     Zaehringer told Mr. Winston that David Woodard, Director of Marketing for SoBell, was "the person who handles the [federal pensions] transactions daily." Zaehringer also told Mr. Winston that "as a planning

7

firm we have placed several million dollars in this [federal pension] plan and have never had an issue." On information and belief, defendant Andrew Gamber is or was, at all relevant times, an investor in or effectively controlled, SoBell, and is or was a director or officer of SoBell. SoBell was, on information and belief, the predecessor in interest to Financial Product Distributors.

27. Based on Zaehringer recommendations and assurance the Winstons bought two federal pension contracts (one each) through SoBell in December 2015 and early January 2016. Goldstar Trust was the designated Trustee and Upstate Law Group was the escrow agent.

28. Based on Zaehringer's recommendation, acting as an agent for SMA Hub, an Oregon company specializing in secondary mortgages, the Winstons also purchased two Symetra Life Insurance Company secondary annuity contracts with Goldstar Trust again serving as Trustee.

29. Sometime around the Spring of 2016, Zaehringer started talking to Mr. Winston about selling the two Symetra secondary annuities and buying more federal pension annuities (Zaehringer's description). In an email dated July 19, 2016 Zaehringer stated that "If there is a default, you are not going to lose any principal or interest."

30. In and around August 2016 the two Symetra contracts were sold, and additional federal pension "annuities" (which Zaehringer said were risk free because the principal and interest were guaranteed by the federal government) were purchased through Financial Products

8

Distributors and Performance Arbitrage. Upstate Law Group was the escrow agent.

31. On information and belief Financial Products Distributors was the successor to SoBell, and was owned by either Gamber or Woodard or both. To the best of his recollection and belief, sometime around the purchase of the pension annuities, Mr. and Mrs. Winston's accounts were moved from Annuity FYI to Performance Arbitrage, which was also owned by David Woodard.

32. All of the defendants involved in these transactions violated the Federal Anti-Assignment Acts, including Sections 38 U.S.C. § 5301(a) and 37 U.S.C. § 701.

33. In May 2017, Mr. Winston told Zaehringer that one of Sue Winston's pension contracts was in default. Zaehringer and Woodard both told Mr. Winston not to worry about it. It would be taken care of.

34. During this time Zaehringer continue to repeat what he had told Mr. Winston repeatedly, that "the Buyer is protected from all of these risks, both those known and unknown" . . . that "Upstate Law Group . . . will monitor for receipt of payments and inform Zaehringer's firm as the Distributor, Performance Arbitrage Company, and the Buyer if a payment is received."

35. In July 2017 Performance Arbitrage bought the contract that was in default in Sue Winston's account and issued her a Promissory Note, which would was to pay approximately 80% of the monthly contracted

payment, and Performance Arbitrage also pledged to pay an additional $229 a month to maintain the full contracted monthly payment amount.

36.    In November 2017 Mr. Winston first learned that sometime around April 2017 Life Funding Options had purchased or absorbed Performance Arbitrage and shortly thereafter suspended November, December and January payments. In early December Mr. Winston sent emails to David Woodard and Life Funding Options stating that Life Funding Options had no authority to withhold payments. Mr. Winston then demanded that Life Funding Options sell all of Sue and Tom Winston's contracts.

37.    On December 11, 2017 Life Funding Options sent Mr. Winston an email telling him that there was not a secondary market for their contracts. Zaehringer had repeatedly told Mr. Winston that there was a secondary market for their contracts.

38.    On December 12, Zaehringer told Mr. Winston to call Upstate Law Group, Performance Arbitrage and Financial Products about the defaulted payments, effectively trying to remove himself and Annuity FYI from representing the Winstons. Zaehringer told Mr. Winston that David Woodard and Upstate Law Group were not talking to him.

39.    On December 13, Upstate Law Group sent Mr. Winston an email stating that Zaehringer was lying, that he knew full well why Life Funding Options was doing what they were doing in withholding payments, i.e. that the pensioners themselves had defaulted on the contracts. Upstate

Law Group further declared that the Winstons had accepted the risks with the structured settlement contracts.

40.     On December 14, 2017, Zaehringer again stated to Mr. Winston that federal funds due under the contracts go directly to the escrow agent, just as he had prior to the original sale of these products. Zaehringer reaffirmed this position and said that the pensioner "sellers" were supposed to be out of the equation after the sale of his/her pension to the buyer, in this case the Winstons. Zaehringer was told this by Woodard, who provided training to Zaehringer with respect to these products.

41.     Life Funding Options made sporadic payments on the Winstons' contracts through August 1, 2018. In February 2019 Life Funding Options suspended operations and payments on the IRA Services accounts "due to the actions of the Consumer Protection Bureau and the South Carolina Department of Consumer Affairs. Life Funding Options also denied accountability on the Goldstar accounts.

42.     On information and belief, Ms. Kern-Fuller and Upstate Law Group have used their firm's IOLTA account as the conduit through which the other defendants channel their monies in connection with the schemes described above. Without limiting the generality of the foregoing, the investors have made their lump sum deposits into this IOLTA account and, under the direction of Ms. Kern- Fuller and Upstate Law Group, the funds were then dispersed to the veterans and to one or more of the Defendants. Ms. Kern-Fuller and Upstate Law Group also have received the veterans'

11

monthly payments directly from the Veterans Administration and sent each veteran the remainder of the benefit payment, after deducting the veteran's loan repayment amount.

45.    Collectively, the defendants maintain a network of web sites designed to attract financially desperate veterans seeking a source of ready cash. The defendants promised veterans that they will find buyers, like the Winstons, to purchase the stream of the veteran's pension income.

46.    None of the documents or other disclosures made to the Winstons discloses that these transactions are prohibited and void under the Federal Anti-Assignment Acts, nor do they reveal the multiple lawsuits and regulatory actions taken against the defendants by the states of Mississippi, Texas, Pennsylvania, New Mexico, California  and Arkansas.

47.    On information and belief, the defendants here extracted substantial "commissions" in connection with the Winstons' structured products without disclosing this fact to the Winstons or the veterans.

48.    On information and belief, none of the defendants were, at any time relevant to plaintiffs' claims, registered to sell securities in Tennessee. Furthermore, the federal pension contracts recommended and sold to the Winstons were not registered to be sold in Tennessee as securities.

## V.  LEGAL CLAIMS

### COUNT ONE – VIOLATION OF TENNESSEE SECURITIES ACT

12

49.     Plaintiffs incorporate herein all paragraphs above.

50.     In connection with the offer and sale of securities, defendants intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of the Tennessee Securities Act, T.C.A. § 48-2-121, and actionable under T.C.A. § 48-2-122.

51.     Plaintiffs reasonably relied on defendants' representations and were unaware of the true facts.

52.     Plaintiffs have been damaged as a result of defendants' misconduct.

53.     Defendant Gamber is liable under § 48-2-122(g) for his own misrepresentations and omissions and is liable for the securities law violations of SoBell and Financial Products Distributors because defendant Gamber had the power, directly or indirectly, to control the activities of SoBell and Financial Products Distributors.

54.     Defendant SoBell is also liable for the securities law violations of Gamber, Woodard and Zaehringer pursuant to the doctrine of *respondeat superior* because Gamber, Woodard and Zaehringer were agents of SoBell.

55.     Defendant Zaehringer is liable under § 48-2-122(g) for his misrepresentations and omissions. Annuity FYI because defendant

Zaehringer had the power, directly or indirectly, to control the activities of Annuity FYI.

56.  Defendant Annuity FYI is liable under § 48-2-122(g) for its misrepresentations and omissions, is liable for the securities law violations of Zaehringer, and is also liable for Zaehringer's actions pursuant to the doctrine of *respondeat superior* because Zaehringer was an agent and employee of Annuity FYI.

57.  Defendant David Woodard is liable under § 48-2-122(g) for his own misrepresentations and omissions and is liable for the securities law violations of SoBell, Performance Arbitrage, Financial Products Distributors and, on information and belief, Life Funding Options, because defendant had the power, directly or indirectly, to control the activities of SoBell, Performance Arbitrage, Financial Products Distributors and Life Funding Options.

58.  Defendant Performance Arbitrage is liable under § 48-2-122(g) for its own misrepresentations and omissions and is also liable for the securities law violations of Woodard and Zaehringer pursuant to the doctrine of *respondeat superior* because Woodard and Zaehringer were agents of Performance Arbitrage.

59.  Kate Synder and Michelle Plant are liable under § 48-2-122(g) for the securities law violations of Life Funding Options because defendants Synder and Plant had the power, directly or indirectly, to control the activities of Life Funding Options.

Case 1:19-cv-00216-JRG-CHS   Document 1-2   Filed 07/24/19   Page 40 of 50   PageID #: 45

60.     Defendant Life Funding Options is liable under § 48-2-122(g) for its own misrepresentations and omissions and for the security law violations of Performance Arbitrage because LFO purchased Performance Arbitrage and assumed liability for all of Performance Arbitrage's actions.

60.     Defendant Candy Kern-Fuller is liable under § 48-2-122(g) for her own misrepresentations and omissions and is liable for the securities law violations of defendant Upstate Law Group as a partner.

61.     Defendant Upstate Law Group is liable under § 48-2-122(g) for its own misrepresentations and omissions, is liable for the security law violations of the other defendants because Upstate Law Group aided and abetted the security law violations of the other defendants, and is liable for the securities law violations of Candy Kern-Fuller.

62.     Pursuant to T.C.A. § 48-2-122, plaintiffs are entitled to recover from defendants the losses plaintiffs have sustained and will sustain, interest, and attorney's fees.

## COUNT TWO – VIOLATION OF SECTION 12 OF SECURITIES ACT

63.     Plaintiffs incorporate by reference all paragraphs above.

64.     This Count is brought pursuant to § 12a(2) of the Securities Act, 15 U.S.C. § 77*l*, by the Winstons against all defendants.

65.     Defendants were sellers, offerors, and/or solicitors with respect to the federal pension investments sold to the plaintiffs.

66.    Defendants were not registered to sell the federal pension investments to the Winstons.  The federal pension securities were not registered to be sold in Tennessee.

67.    The individual defendants participated in the preparation of the documents used to sell the federal pension investments.

68.    The documents by which the federal pension investments were offered to plaintiffs and others were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

69.    Defendants were aware of the misleading nature of the documents used to sell the federal pension investments.

70.    Through the conduct alleged above, defendants violated, are liable under, or controlled a party who is liable under §12a(2) of the Securities Act.

71.    Plaintiffs have been damaged and are entitled to all relief from defendants permitted by § 12a(2) of the Securities Act.  The Winstons hereby tender the investments to defendants.

72.    At the times the Winstons purchased the federal pension investments, they did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set forth above. Less than one year has elapsed from the time that plaintiffs discovered, and could reasonably have discovered, the misconduct giving rise to this case.

16

## COUNT THREE – VIOLATION OF SECTION 15 OF SECURITIES ACT

73.     Plaintiffs incorporate by reference all paragraphs above.

74.     This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o, by the Winstons against Zaehringer, Woodard, Synder, Plant, Gamber and Kern-Fuller.

75.     Defendants were control persons of Annuity FYI, Performance Arbitrage, Financial Products Distributors, Life Funding Options, SoBell Ridge, and Upstate Law Group. by virtue of their positions as directors or senior officers of these entities and/or by virtue of their relationships with the entities.   These defendants exercised control over the general affairs of these entities and had the power to control the conduct giving rise to plaintiffs' claims.

76.     Defendants are therefore liable for the Securities Act violations alleged in Count Two above.


## COUNT FOUR – GROSS NEGLIGENCE

77.     Plaintiffs incorporate herein all paragraphs above.

78.     Defendants' actions as set forth above constituted gross negligence.   Defendants' negligence was the proximate cause of the losses sustained by the plaintiffs.

79. Plaintiffs are therefore entitled to judgment against defendants in the amount of all of plaintiffs' losses, plus prejudgment and post-judgment interest.

80. Because defendants conduct rose to the level of a conscious disregard of the rights of plaintiffs, plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

## COUNT FIVE – COMMON LAW FRAUD

81. Plaintiffs incorporate herein all paragraphs above.

82. In connection with their dealings with plaintiffs, defendants intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of Tennessee's common law of fraud.

83. Plaintiffs reasonably relied on defendants' representations and were unaware of the true facts.

84. Plaintiffs have been damaged as a result of defendants' misconduct.

85. Defendant Gamber is liable for his own misrepresentations and omissions and is liable for the misrepresentations and omissions of SoBell because defendant Gamber had the power, directly or indirectly, to control the activities of SoBell and Financial Products Distributors.

85. Defendant SoBell is liable for the companies' own misrepresentations and omissions and for those of Gamber, Woodard and Zaehringer pursuant to the doctrine of *respondeat superior* because Gamber, Woodard and Zaehringer were agents of SoBell.

86. Defendant Zaehringer is liable for his own misrepresentations and omissions.

87. Defendant Annuity FYI is liable for the companies' own misrepresentations and omissions is also liable for the misrepresentations of Zaehringer pursuant to the doctrine of *respondeat superior* because Zaehringer was an agent of Annuity FYI.

88. Defendant David Woodard is liable for his own misrepresentations and omissions and for the misrepresentations of SoBell, Performance Arbitrage, Financial Products Distributors and, on information and belief, Life Funding Options because defendant had the power, directly or indirectly, to control the activities of Performance Arbitrage and Life Funding Options.

89. Defendant Performance Arbitrage is liable for the securities law violations of Woodard pursuant to the doctrine of *respondeat superior* because Woodard was an agent of Performance Arbitrage.

90. Defendants Kate Synder and Michelle Plant are liable for the misrepresentations of Performance Arbitrage and Life Funding Options because defendants had the power, directly or indirectly, to control the activities of Life Funding Options, which purchased Performance Arbitrage.

19

91.     Defendant Life Funding Options is liable for the fraud of Performance Arbitrage because LFO purchased Performance Arbitrage and assumed liability for all of Performance Arbitrage's actions.

92.     Plaintiffs are entitled to recover from defendants' compensation for all plaintiffs' losses, plus interest.

93.     Plaintiffs are also entitled to recover punitive damages because of defendants' willful fraud and misconduct.

## COUNT SIX – CIVIL CONSPIRACY

94.     Plaintiffs incorporate herein all paragraphs above.

95.     The Defendants engaged in a civil conspiracy to defraud the Winstons.   Defendants activities reflect the joint assent of two or more parties in furtherance of an unlawful enterprise.

96.     Gamber (and his entities), Woodard (and his entities), Zaehringer (and his entities), Kate Synder and Michell Plant (and their entities), Ms. Kern-Fuller (and her firm), and Zaehringer and Annuit FYI have all conspired in an effort to defraud the Winstons.   The primary purpose of the combinations of these defendants was to injure and defraud the Winstons.

97.     Because the sales of the federal pensions were illegal under the anti-assignment acts, the sales were void ab initio and defendants should be required to rescind plaintiffs' payments for the federal pension contracts, plus interest.

20

THEREFORE, plaintiffs respectfully request that the Court:

(a)   Award judgment in favor of plaintiffs and against defendants for all losses incurred by plaintiffs as a result of the misconduct set forth above.

(b)   Award prejudgment interest and attorneys' fees in favor of each plaintiffs.

(c)   Award plaintiffs punitive damages.

(d)   Afford plaintiffs a trial by jury.

(e)   Provide such relief as the Court deems to be just and proper.


Respectfully submitted,


_____
John B. Veach III, BPR #8994
FALLS & VEACH
20 Cedarcliff Road
Asheville, NC  28803
828.277.6001
Attorneys for Plaintiffs

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

THOMAS C. AND SUE M. WINSTON,          )
Individually and as owners of the           )
Thomas Winston IRA R100610337          )
and the Sue Winston IRA                      )
R1000610340 respectively,                    )
                                                         )
      Plaintiffs,                                  )
                                                         )
v.                                                        )
                                                         )
RICHARD ZAEHRINGER, individually      )          -
and as agent for Annuity FYI, ANNUITY  )
FYI, DAVID WOODARD, individually and )
as Owner of Performance Arbitrage, and   )
Financial Products Distributors,               )
PERFOMANCE ARBITRAGE,                   )
FINANCIAL PRODUCTS                         )
DISTRIBUTORS, KATE SYNDER and        )
MICHELLE PLANT, individually and as     )
owners of Life Funding Options, LIFE       )
FUNDING, OPTIONS, ANDREW              )
GAMBER, individually and as owner of      )
SoBell Ridge Corp., SOBELL RIDGE,        )
CORP., CANDY KERN-FULLER, and        )
UPSTATE LAW GROUP, LCC,                  )
                                                         )
      Defendants.                                )
                                     )

### AFFIDAVIT OF SERVICE

The undersigned hereby affirms that he has served the Removal of C.A. No. 19C699

pending in the Circuit Court for Hamilton County, Tennessee for the Eleventh Judicial Circuit at

Chattanooga upon the Counsel for the Plaintiff, John B. Veach III, Esq. this 24th of July, 2019, by

mailing a copy of the same to him via U.S. First Class Mail at:

    Falls & Veach
    20 Cedarcliff Road
    Asheville, NC 28803

And sending a copy of the same via U.S. First Class mail this 24th of July, 2019, to Brian S. Spitler,

Esq., counsel for Richard Zaerhinger:

Brian S. Spitler, Esq.
**Carlock Copeland & Stair, LLP**
920 McCallie Ave
Chattanooga, TN 37403

And, finally by filing a copy of the same with the Clerk of the Circuit Court for Hamilton

County, Tennessee for the Eleventh Judicial Circuit at Chattanooga this 24th of July, 2019 by

hand delivery to:

Circuit Court Clerk
500 Courthouse, 625 Georgia Avenue
Chattanooga, TN 37402

Respectfully submitted,

Howard E. Sutter III, Esq.
**Upstate Law Group LLC.**
200 E. Main St.
Easley, SC 29640
864-855-3114
864-855-3446
Trey@UpstateLawGroup.com

*Pending pro hac vice admission*

**ATTORNEY FOR DEFENDANTS UPSTATE LAW
GROUP, LLC AND CANDY KERN-FULLER**