UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

THOMAS C. WINSTON, et al.,           )
                                      )
            Plaintiffs,              )
                                      )
v.                                    )          No. 1:19–CV–216
                                      )
RICHARD ZAEHRINGER, et al.,          )
                                      )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Court's Show Cause Orders and Motions filed by Plaintiffs and Defendants. The Court rules as follows:

- Defendant Richard Zaehringer's Motion to Dismiss, [Doc. 29], is GRANTED in part and DENIED in part, and Plaintiffs' claim of gross negligence is DISMISSED;

- Defendants Candy Kern-Fuller and Upstate Law Group's Motion to Dismiss, [Doc. 31], is DENIED;

- Defendant Annuity FYI's Motion to Dismiss, [Doc. 33], is DENIED;

- Plaintiffs' Motions for Extensions titled Agreed Leave to Extend the Time For Plaintiffs to Respond to the Motions to Dismiss of Richard Zaehringer, Candy Kern-Fuller and Upstate Law Group, LLC, and Annuity FYI, [Docs. 37–38], are GRANTED;

- Defendants Candy Kern-Fuller and Upstate Law Group's Response to the Show Cause Order, [Doc. 57], establishes subject matter jurisdiction and the Show Cause Order as to them is satisfied;

- Plaintiffs Response to the Show Cause Order satisfied the requirements of returning proof of service for Defendant Annuity FYI, [Doc. 55], and they are ORDERED to return proof

1

of service for Defendants Candy Kern-Fuller, Upstate Law Group LLC, and Richard Zaehringer within thirty days of the entry of this Order.

## I. Background

In 2015, Plaintiffs Thomas and Sue Winston decided to shop for new annuities. [Doc. 18, PageID 163]. Mr. Winston contacted Defendant Annuity FYI to get information about annuities and other investments. [*Id.*]. According to the Winstons, Annuity FYI's website claimed that all of its affiliates were "qualified Financial Planners, Financial Advisors, and/or Licensed Agents[,]" and that the affiliates had "been carefully chosen by Annuity FYI for their professionalism, knowledge, experience, and ethics." [*Id.*].

Almost immediately after they contacted Annuity FYI, Defendant Richard Zaehringer contacted them about their inquiry. [*Id.*]. Mr. Zaehringer identified himself as an employee and agent of Annuity FYI and stated that he was compensated by Annuity FYI through a salary and bonus. [*Id.*]. Mr. Zaehringer even visited the Winstons at their home. [*Id.*]

Over the next several months, the Winstons and Mr. Zaehringer discussed several types of investments and projected monthly payments. [*Id.* at PageID 164]. On May 28, 2015, Mr. Zaehringer emailed the Winstons and said, "[T]he rewards [Mr. and Mrs. Winston] will reap (by buying annuities from me) are piece [sic] of mind, not just monetary savings in fee reduction, safety of principle [sic] and income doubling to maintain [their] quality of care." [*Id.*].

Then, in July of 2015, Mr. and Mrs. Winston, through their IRAs, Thomas Winston IRA R100610337 and Sue Winston IRA R1000610340, sold their annuities and attempted to purchase American Equity annuities through Mr. Zaehringer. [*Id.*]. About four months later, Mr. Zaehringer told the Winstons that the purchase didn't go through because American Equity never received the correct paperwork. [*Id.*]. This confused Mr. Winston because he gave all the paperwork required

for the American Equity annuities to Mr. Zaehringer at Mr. Zaehringer's request. [*Id.*]. With the American Equity annuities unavailable, Mr. Zaehringer told the Winston's about "federal pension annuities." [*Id.* at PageID164–65].

Mr. Zaehringer described "federal pension annuities" in this way:

> An individual who receives a federal pension, typically a military pension, would rather have a lump sum [ . . . ] than the monthly stream of income. We have an exclusive contract to find an individual who needs income stream in exchange for a lump sum and essentially match up needs. Those individuals who own the pensions are only allowed to "sell" a maximum of ten years of pension payments. The federal government backs the pension, not an insurance company. For added protection for the purchaser, there is a life insurance [policy] on those individuals selling part of their pension to cover the purchaser should the seller die during the payout."

[Doc. 18, PageID 165].

Mr. Zaehringer told Mr. Winston that Mr. Winston "was protected from any loss of principal and interest with the federal pension purchase." [*Id.*]. He went on to say in a July 2016 email, "If there is a default, you are not going to lose any principal or interest." [*Id.* at PageID 166]. He also assured the Winstons that a secondary market existed for their contracts. [*Id.* at PageID 168]. Based on Mr. Zaehringer's recommendation and assurance, the Winstons bought two federal pension contracts. [*Id.* at PageID 166].

The Winstons signed the contracts directly with the pension holders, contracts for escrow services with Defendant Upstate Law Group, and contracts for purchase assistance with Mr. Zaehringer and Financial Products Distributers, LLC. [Docs. 31–1 through 31–5; 31–7 through 31–11; Docs. 31–17 through 31–21]. The contracts with Upstate State Law Group provide that Upstate Law Group will provide escrow services to the Winstons and provides that Upstate Law Group will be legal counsel for the Winstons. [*See, e.g.,* Doc. 31–7, PageID 1699]. The contracts provide legal fee arrangements, define the scope of representation, and state that if a situation

arises that requires increased fees but the Winstons do not wish to pay the fees, then the agreement is terminated. [*See, e.g., id.*]. The contracts do not contain a forum selection clause. [*See, e.g., id.*].

The Winstons allege that after signing their contracts, they learned that Upstate Law Group knew that the federal pension contracts violated federal law and several jurisdictions had already stopped Upstate Law Group and Defendant Candy Kern-Fuller, an attorney at Upstate Law Group, from entering into any further contracts like the ones the Winstons entered. [Doc. 18, PageID 172]. The Winstons allege that Upstate Law Group and Ms. Kern-Fuller were major components of the scheme that led to the Winstons purchasing contracts that violated federal law. [*Id.* at PageID 169–70]. The Winstons claim that:

> investors, including plaintiffs, have made their lump sum deposits into [Upstate Law Group's] IOLTA account and, under the direction of Ms. Kern-Fuller and Upstate Law Group, the funds were then dispersed to the veterans and to one or more of the Defendants. Ms. Kern-Fuller and Upstate Law Group also have received the veterans' monthly payments directly from the Veterans Administration and sent each veteran the remainder of the benefit payment, after deducting the veteran's loan repayment amount.

[*Id.*]. The Winstons further allege that Ms. Kern-Fuller and Upstate Law Group's involvement in the scheme included:

> (1) review[ing] and assist[ing] veterans in obtaining identity and financial verification documents; (2) receiv[ing] authorization from veterans to make inquiries of the Veterans Administration to confirm the veteran's income and other matters associated with the scheme; (3) facilitate[ing] the execution of the contracts; (4) provid[ing] "escrow" services for the persons who buy the veterans' loans; (5) su[ing] allegedly defaulting veterans in an effort to enforce the agreements; and (6) oppos[ing] attempts to discharge such debt through bankruptcy.

[*Id.* at PageID 170]. According to Mr. Winston, Ms. Kern-Fuller told him that she had sued pensioners to recover money owed to purchasers of federal pension contracts. [*Id.* at PageID 171].

As alleged by the Winstons, this scheme was profitable for Ms. Kern-Fuller and Upstate Law Group. They claim that Ms. Kern-Fuller and Upstate Law Group benefited from the scheme

4

by "deduct[ing] approximately 40–50% from the Purchaser's investment funds for the Defendants' ostensible commission," wiring the commissions to other Defendants, and deducting substantial fees. [*Id.* at PageID 170–71].

Eventually, one of the Winston contracts went into default. [*Id.* at PageID 167]. After the default, Mr. Zaehringer told the Winstons not to worry and reiterated that that the Winstons were "protected from all of these risks, both the known and unknown." [*Id.* at PageID 167–68]. Then, payments to the Winstons stopped under three of their four contracts. [*Id.* at PageID 168].

At some point Mr. Winston reached out to Ms. Kern-Fuller and Upstate Law Group about the defaults on the contracts. In December of 2017, Ms. Kern-Fuller informed Mr. Winston that a secondary market for the contracts did not exist. [*Id.*]. Then, Upstate Law Group said that Mr. Zaehringer was lying, and that Mr. Zaehringer knew why payments were being withheld—because the pensioners stopped paying on the contracts. [*Id.* at PageID 169]. Upstate Law Group also told the Winstons that the Winstons accepted the risks of the contracts. [*Id.*].

On June 6, 2019, the Winstons, on behalf of themselves and their IRAs, filed a complaint in Hamilton County Circuit Court for the Eleventh Judicial District of Tennessee, and, on July 24, 2019, Defendants removed it to this Court. [Doc. 1]. The Winstons have now filed a Third Amended Complaint bringing causes of action against all Defendants for violation of the Tennessee Securities Act, violation of Section 12 of the Securities Act, violation of Section 15 of the Securities Act, gross negligence, common law fraud, and civil conspiracy. [Doc. 18]. The Winstons have now abandoned their claims under the Federal Securities Act. [Doc. 42, PageID 2193].

In response to the Third Amended Compliant, Mr. Zaehringer, Ms. Kern-Fuller, Upstate Law Group, and Annuity FYI filed motions to dismiss, [Docs. 29, 31, 33], for lack of personal

5

jurisdiction and failure to state a claim. The Court will address the lack of personal jurisdiction arguments first.

After addressing the personal jurisdiction arguments, the Court will address arguments for failure to state a claim made by the parties. Mr. Zaehringer made eight arguments. [Doc. 29]. Three of these arguments involve claims brought under the Federal Securities Act, and the Winstons have withdrawn those claims. [*Id.* at PageID 1067–68; Doc. 42, PageID 2188]. The remaining arguments, summarized and reordered are:

1.  Plaintiffs did not state a claim for fraud or gross negligence;
2.  Plaintiffs did not plead fraud with particularity as required by Federal Rule of Civil Procedure 8(b);
3.  Plaintiffs did not state a claim for civil conspiracy;
4.  The Tennessee Securities Act does not apply to this case because the Winstons purchased annuities, which are not regulated by the Tennessee Securities Act; and
5.  Plaintiffs released any and all claims against Mr. Zaehringer in the sales contract.

[Doc. 29, PageID 1067–68]. Annuity FYI argues that the Tennessee Securities Act does not apply because the federal pension contracts are not securities under the statute, which overlaps with Mr. Zaehringer's argument. [Doc. 33]. Ms. Kern-Fuller and Upstate Law did not make arguments for failure to state a claim; they only requested to join in Mr. Zaehringer and Annuity FYI's arguments. [Doc. 31, PageID 1617].

## II. Motions to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

### 1. Standard

When a defendant files a motion to dismiss based on lack of personal jurisdiction, the burden is on the plaintiff to show that the court has personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008). When establishing personal jurisdiction based on written submissions and affidavits, "the plaintiff's burden is relatively

6

slight." *Id.* (internal quotation marks omitted). Viewing the facts in favor of the plaintiff, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists . . . . " *Id.* at 360–61. When a court lacks personal jurisdiction, it may dismiss or transfer the case. *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483–84 (6th Cir. 2009). Within the Sixth Circuit, a ruling in favor of a plaintiff does not necessarily end the issue. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017). A defendant may "continue to contest personal jurisdiction by requesting an evidentiary hearing or moving for summary judgment should the evidence suggest a *material variance* from the facts as presented by plaintiffs." *Id.*

The long-arm statute of the state in which a federal court sits determines the federal court's personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Tennessee's long-arm statute gives jurisdiction "[o]n any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20–2–225. The Tennessee Supreme Court has ruled that this statute permits the exercise of jurisdiction to the full extent permissible under the United States Constitution. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 646 (Tenn. 2009). Therefore, this Court must determine if exercising jurisdiction over Defendants would violate federal due process. *Daimler AG*, 571 U.S. at 125.

A court's exercise of jurisdiction does not violate federal due process when a defendant has "certain minimum contacts with the [forum] State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" *Id.* at 126 (quoting *Goodyear*, 564 U.S at 923). The tenent of "fair play and substantial justice" has led to two types of personal jurisdiction: general and specific. *Id.* at 127.

A court can exercise general personal jurisdiction over a defendant "when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may

Case 1:19-cv-00216-JRG-CHS   Document 59   Filed 06/16/20   Page 7 of 28   PageID #: 2378

exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (internal quotation marks omitted). For an individual, an individual's domicile determines whether a court has general jurisdiction, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011), and an entity must have contacts "so continuous and systematic as to render them essentially at home in the forum State," for a court to have general jurisdiction over it. *Daimler AG*, 571 U.S. at 127 (internal quotation marks omitted).

Unlike general jurisdiction, specific jurisdiction focuses on the connection "between the forum and the underlying controversy." *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 917–18 (6th Cir. 2019) (quoting *Goodyear*, 564 U.S. at 919). A defendant's contacts with the forum state, not the plaintiff's contacts, build that connection. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). A defendant must have directed some action to the forum state; the effects of an action that harmed a plaintiff residing in the state is insufficient. *Id.* at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Importantly, "these . . . principles apply when intentional torts are involved." *Id.*

A connection between the forum and the underlying controversy exists (1) when a defendant purposefully availed itself of the privileges of the forum state or caused a consequence in the state, (2) when the cause of action arises from defendant's activities, and (3) when "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

8

2. __Motion to Dismiss for Lack of Personal Jurisdiction filed by Ms. Kern-Fuller and Upstate Law Group__

Ms. Kern-Fuller and Upstate Law Group move the Court to dismiss the claims against them for lack of personal jurisdiction for three reasons. First, they claim that the Court does not have general jurisdiction because they do not have systematic and continuous contacts with Tennessee. [Doc. 32, PageID 1770]. Second, they claim that they never availed themselves to Tennessee, so the Court does not have specific personal jurisdiction. [*Id.* at PageID 1771]. Last, they argue that the Winstons signed contracts with forum selection clauses that required this suit to be brought in South Carolina, and the Court should dismiss the claims against them because the Winstons brought the claims in Tennessee. [*Id.* at PageID 1773].

The Winstons counter and say that the Court has both general and specific jurisdiction. [Doc. 40, PageID 1818]. The Winstons argue that the Court has general jurisdiction over Ms. Kern-Fuller and Upstate Law Group because they "wire[] transferred money to the Winstons continuously until all of the pensions went bust[.]" [*Id.* at PageID 1825]. Next, the Winstons claim that the Court has specific personal jurisdiction over them because the claims arise out of and are related to Ms. Kern-Fuller and Upstate Law Group's actions directed toward Tennessee. [*Id.* at PageID 1818]. Third, the Winstons argue that the forum selection clauses do not apply because the contracts are *void ab initio* and induced by fraud. [*Id.* at PageID 1829]. Last, The Winstons also claim that the Court has personal jurisdiction over Ms. Kern-Fuller and Upstate Law Group under the Tennessee Securities Act. [*Id.* at PageID 1826].

*1. The Court does not have general jurisdiction over Ms. Kern-Fuller and Upstate Law Group.*

The Court can only exercise general jurisdiction over Ms. Kern-Fuller and Upstate Law Group if they are "at home" in Tennessee. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*,

9

564 U.S. 915, 919, 924 (2011). This means that "[g]eneral jurisdiction exists when a defendant's 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (quoting *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir.2002)). Defendants argue that the Court does not have general jurisdiction because they don't have systematic and continuous contacts with Tennessee. [Doc. 32, PageID 1770]. The Winstons disagree, saying, "The Upstate Defendants wire[] transferred money to the Winstons continuously until all of the pensions went bust[.]" [Doc. 40, PageID 1825]. These contacts, as alleged by the Winstons, are not enough and do not meet the prima facie case for general jurisdiction. Wire transfer payments to the Winstons are not enough contacts to show that the Ms. Kern-Fuller and Upstate Law Group have so many contacts with Tennessee that they can be sued in the state for any reason. Therefore, the Court, on the facts alleged, does not have general jurisdiction over Defendants Kern-Fuller and Upstate Law Group.

> **2.** ***The Court has specific jurisdiction over Ms. Kern-Fuller and Upstate Law Group because they have minimum contacts with Tennessee, and the Winstons have made a prima facie showing of jurisdiction.***

The Court has specific jurisdiction over Ms. Kern-Fuller and Upstate Law Group if the Winstons show that they (1) purposefully availed themselves to Tennessee or caused a consequence in the state, (2) the causes of action arise from their own activities, and (3) their actions in Tennessee or the consequences caused by their actions directed towards Tennessee are substantial enough to make jurisdiction reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Defendants' arguments center on the first part of the test. [*See* Doc. 32, PageID 1771–72]. As stated by Defendants, the first element, purposeful availment, is the "'constitutional touchstone'

of personal jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). It is the constitutional touchstone because if a defendant has purposefully availed itself to the forum, the defendant has created minimum contacts with the forum. *See id.* A defendant can purposefully avail itself to a forum and satisfy constitutional requirements even if they have had few, infrequent contacts with the state. *See Calder v. Jones*, 465 U.S. 783 (1984).

In a seminal specific personal jurisdiction case, *Calder v. Jones*, the United States Supreme Court addressed the issue of whether out-of-state defendants could be forced to defend a lawsuit in a state that they had rarely been to. 465 U.S. 783 (1984). The defendants worked as a reporter and an editor for the *National Enquirer*. *Id.* at 785–86. They were Florida residents and wrote, edited, and published an article about the plaintiff in the case. *Id.* The paper sold almost 600,000 copies in California, where the plaintiff resided. *Id.* at 785. The plaintiff claimed that the article was defamatory and sued the Florida residents in California state court. *Id.* at 785.

One defendant, who wrote the article, traveled to California frequently for business, called "sources in California for the information contained in the article," and called the plaintiff's husband to read the article to him and to get a comment. *Id.* at 785–86. The other defendant, the editor of the article, was also the president of the *National Enquirer*. *Id.* at 786. This defendant had only been to California twice. *Id.*

The defendants argued that these contacts did not give California courts personal jurisdiction over them, but the Supreme Court disagreed. *Id.* at 790. The Supreme Court ruled that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789. The defendants wrote and edited "an article that they knew would have a potentially devastating impact upon respondent." *Id.* at 789–90. Plus, the defendants "knew that the brunt of

11

that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation," and they could have "'reasonably anticipate[d] being haled into court' [in California] to answer for the truth of the statements made in their article." *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

While the Supreme Court ruled that the California courts had jurisdiction over the *Calder* defendants, the Supreme Court has also made clear that a defendant cannot be haled into a court unless a defendant's actions cause consequences in the forum state, even for intentional torts. In *Walden v. Fiore*, 571 U.S. 277 (2014), two plaintiffs traveled through the Atlanta airport, and a Drug Enforcement Administration (DEA) agent seized the plaintiffs' cash. *Id* at 279. After the seizure, the plaintiffs continued their travels to Las Vegas, Nevada. *Id.* at 280. Then, the DEA agent "helped draft an affidavit to show probable cause for forfeiture of the funds and forwarded that affidavit to a United States Attorney's Office in Georgia. According to [plaintiffs], the affidavit was false and misleading . . . . " *Id.* at 280–81. The cash was later returned, but the plaintiffs filed suit in the United States District Court for the District of Nevada anyway. *Id.* at 281. The district court dismissed the case for lack of personal jurisdiction, but the United States Court of Appeals for the Ninth Circuit reversed the district court. *Id.* at 282. After granting certiorari, the Supreme Court reversed the Ninth Circuit and determined that the district court did not have personal jurisdiction. *Id.*

The Supreme Court reasoned that the Nevada District Court could not have jurisdiction because the defendant never went to Nevada and never directed any action toward Nevada (or plaintiffs while they were in Nevada). *Id.* at 290–1. The Court said, "[The defendant] never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. In short, when viewed through the proper lens—whether the *defendant's* actions connect him to

the *forum*—[the defendant] formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289. Defendant's actions had nothing to do with Nevada itself. *Id.*

The plaintiffs argued that the effects of the defendant's actions were felt in Nevada, and this gave the Nevada court jurisdiction. *Id.* at 289–90. But the Supreme Court disagreed and said that the effects felt by the plaintiffs in Nevada were contacts caused by the plaintiffs, not the defendant, because the defendant did not direct any action toward Nevada. *Id.* at 290.

These two cases show that a court can have jurisdiction over a defendant even if the defendant has few contacts with the forum, but the defendant must have done something to create a contact with the forum. The plaintiff cannot rely on his or her own contacts with the forum to justify the jurisdiction over the defendant. The Tennessee Supreme Court aptly applied these principles and ruled that a defendant had minimum contacts with the forum and caused consequences in Tennessee in a case similar to this one. In *Masada Inv. Corp. v. Allen*, a defendant filed a third-party complaint against a Texas attorney in an action to quiet title and for damages from a Tennessee real estate deal. 697 S.W.2d 332, 335 (Tenn. 1985). The Texas attorney worked on the real estate deal and allegedly "attached the wrong legal description of the property to be sold" to final documents. *Id.* He never entered Tennessee and had no financial interest in the transaction for the sale of the building. *Id.* This attorney argued that Tennessee courts did not have jurisdiction over him, but the Tennessee Supreme Court disagreed. *Id.*

The Tennessee Supreme Court ruled that his connections with Tennessee met the minimum contacts requirements because he "took independent action in fulfilling his obligations," which included talking with an attorney in Tennessee, drafting documents that complied with Tennessee law, sending documents to Tennessee for execution, and keeping the documents until the closing that occurred in his office. *Id.* The court went on to conclude that the third-party defendant

13

"directed his activities toward the citizens of [Tennessee] and his negligent actions resulted in injury here," and the third-party defendant knew that he was working on documents that would have consequences in Tennessee. *Id.*

Applying the principles of these three cases to Ms. Kern-Fuller and Upstate Law Group, this Court has specific jurisdiction over both of them. Like the *Calder* defendants, Ms. Kern-Fuller and Upstate Law Group had contacts with the forum, albeit a limited amount. Upstate Law Group entered into a contract to perform legal services with Tennessee residents, and Ms. Kern-Fuller, an employee of Upstate Law Group, had contact with Plaintiff on more than one occasion. [Doc. 18, PageID 168, 171]. She told the Winstons that she often sued on behalf of purchasers, and she told them that no secondary market existed for their contracts. [*Id.*]. Also, the contacts that the Winstons alleged in their general jurisdiction argument, wiring money to the Winstons, also creates contacts with Tennessee. [Doc. 40, PageID 1825]. The Winstons also alleged that they participated in a scheme, allegedly drafted the contracts signed by the Winstons and the pensioners, and intentionally facilitated the selling of illegal federal pension contracts to the Winstons. [Doc. 18, PageID 161–62]. Next, like the *Calder* defendants and the third-party defendant in *Masada*, Upstate Law Group and Ms. Kern-Fuller are professionals who took on a job that they knew would have consequences in Tennessee, as they made contracts with the Winstons, had conversations with the Winstons, and rendered services directed towards and having consequences in Tennessee. [*See, e.g.,* Doc. 31–7].

Ms. Kern-Fuller and Upstate Law Group try to minimize their actions and the consequences directed towards Tennessee by claiming that the IRAs owned by the Winstons are technically in other states, [Doc. 32, PageID 1771–72], but the address of the IRAs do not take away from their contacts with Tennessee.

With these contacts, Ms. Kern-Fuller and Upstate Law Group purposefully availed themselves to Tennessee and should have foreseen that they may be called into court within this State. Their actions are far different from the actions of the defendant in *Walder*. In *Walder*, the defendant never left the state, never communicated with the plaintiffs in Nevada, and never would have expected being taken to court in Nevada.

Having shown that Ms. Kern-Fuller and Upstate Law Group have purposefully availed themselves to Tennessee and satisfied the minimum contacts requirement, the first prong of the Sixth Circuit specific jurisdiction test is satisfied. The second prong of the test, that the claims arise from Defendants' contacts, is also satisfied because the Winstons' claims revolve around the allegedly illegal federal pension contracts and torts arising out of Ms. Kern-Fuller and Upstate Law Group's role in organizing and selling of the federal pension contracts. Last, considering the substantial contacts that Ms. Kern-Fuller and Upstate Law Group had with the forum, it is reasonable for this Court to exercise jurisdiction over them—satisfying the requirements of the third prong of the Sixth Circuit test. Therefore, this Court has specific jurisdiction over Ms. Kern-Fuller and Upstate Law Group.

### 3. The forum selection clauses in the contracts do not require dismissal because Ms. Kern-Fuller and Upstate Law Group are not parties to the contracts with forum selection clauses.

Ms. Kern-Fuller and Upstate Law Group argue that the Winstons signed contracts with forum selection clauses that required the cases to be brought in South Carolina. [Doc. 32, PageID 1773]. Defendants point to ten contracts that contain forum selection clauses, but Ms. Kern-Fuller and Upstate Law Group are not parties to those contracts. [*Id.*]. The contracts between Upstate Law Group and the Winstons do not contain forum selection clauses. [Docs. 31–7 through 31–11]. Ms. Kern-Fuller is not a signatory on any of the contracts. The Winstons argue that the forum

selection clauses should not be enforced because the contracts are *void ab inito*. [Doc. 40, PageID 1829].

The Court does not need to determine if the contracts are *void ab inito* at this time because the Winstons have not signed a contract containing a forum selection clause with Ms. Kern-Fuller and Upstate Law Group. The "cardinal rule" of contract interpretation is "to ascertain and give effect to the intent of the contracting parties consistent with legal principles." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019). Without a forum selection clause between the Parties, it cannot be assumed that the Parties intended for a forum selection clause to bind them. While Ms. Kern-Fuller and Upstate Law Group have pointed to forum selection clauses in other contracts signed by the Winstons, they have not cited any authority for or argued that the Court should enforce a forum selection clause in a contract for their benefit as non-signatories. *See generally Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102 (6th Cir. 1997) (discussing when a forum selection clause can be enforced by non-signatories). Therefore, the Court will not dismiss the causes of actions against Ms. Kern-Fuller and Upstate Law Group for bringing this suit in Tennessee.

### 4. Conclusion

Neither Party is correct across the board. The Court agrees with Ms. Kern-Fuller and Upstate Law Group in that it does not have general jurisdiction over them but agrees with the Winstons' argument that there is specific personal jurisdiction. Having ruled that the Court has specific jurisdiction over Defendants, it will not address Plaintiffs' jurisdictional arguments under the Tennessee Securities Act. The Court rules that the Ms. Kern-Fuller and Upstate Law Group do not have a contract with a forum selection clause, and they do not provide arguments that they can enforce other contracts as non-signatories. So, the Winstons did not err in bringing this suit in

16

Tennessee. Therefore, the motion to dismiss for lack of personal jurisdiction filed by Ms. Kern-Fuller and Upstate Law Group, [Doc. 31], is DENIED.

### 3.   <u>**Motion to Dismiss for Lack of Personal Jurisdiction filed by Annuity FYI**</u>

Annuity FYI, like Ms. Kern-Fuller and Upstate Law Group, argues that the Court does not have personal jurisdiction over it. [Doc. 33]. The Winstons argue that the Court has specific personal jurisdiction over Annuity FYI because of its contacts in Tennessee through its website and Mr. Zaehringer. [Doc. 41, PageID 2006–07].

As they did for Ms. Kern-Fuller and Upstate Law Group, the Winstons must satisfy the Sixth Circuit three prong test. The Winstons must show that Annuity FYI (1) purposefully availed itself to Tennessee or caused a consequence in the state, (2) the causes of action arose from its own activities, and (3) its actions in Tennessee or the consequences caused by its actions directed towards Tennessee are substantial enough to make jurisdiction reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Annuity FYI's contacts with the state are significant considering it allegedly sent an agent or employee to the Winstons' home, Mr. Zaehringer, and Mr. Zaehringer contacted the Winstons multiple times. [Doc. 18, PageID 163–65]. These contacts show that Annuity FYI purposefully availed itself to Tennessee and was conducting business in the state. *S. Mach. Co.*, 401 F.2d at 381–82. While Annuity FYI's website could provide additional contacts with Tennessee, an analysis of those contacts cannot reduce its sufficient contacts through Mr. Zaehringer. *See See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522–23 (6th Cir. 2006). Therefore, the first prong of the Sixth Circuit test is satisfied.

With the first prong of the Sixth Circuit test met, the Court will now turn to the second and third prongs. The Winstons' allegations arise out of Annuity FYI's contacts with the forum because

17

its contacts led to the intentional misrepresentation that Mr. Zaehringer was a licensed professional, and Mr. Zaehringer made several representations and assisted in the selling of the federal pension contracts that are the center of this lawsuit. These allegations show that the second prong of the Sixth Circuit test is satisfied. Last, the requirements of the third prong are also met because Annuity FYI's contacts are substantial and, based on those contacts, the Court can reasonably assert jurisdiction over it. Therefore, Annuity FYI's motion to dismiss for lack of personal jurisdiction, [Doc. 33], is DENIED.

### III. Motions to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

#### 1. <u>Standard</u>

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted);

18

*see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

Generally, if a court examines documents outside the pleadings when ruling on a motion to dismiss, the motion is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009). A court may look beyond the pleadings if an exhibit is integral to the plaintiff's claims but is not required to do so. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). In this case, the Winstons and Defendants have filed a voluminous number of exhibits and documents outside the pleadings for their Rule 12(b)(6) arguments. Considering the volume of documents outside the pleadings, the Court will not examine the documents outside the pleadings for the Rule 12(b)(6) motions to dismiss. Further, seeing that Mr. Zaehringer advocates the Court to consider the motion as a motion to dismiss instead of a motion for summary judgment, [Doc. 30, PageID 1071], the Court declines to convert the motions to dismiss to motions for summary judgment.

## 2. __The Winstons properly pleaded common law fraud and negligent misrepresentation.__

Defendants argue that the Winstons failed to properly plead common law fraud and gross negligence. [Doc. 30, PageID 1083–91]. After reviewing the Third Amended Complaint, the Court has determined that the Winstons have adequately pleaded common law fraud and negligent misrepresentation but not gross negligence.

In Tennessee, common law fraud (also known as fraudulent or intentional misrepresentation) has six elements:

1) the defendant made a representation of an existing or past fact;
2) the representation was false when made;
3) the representation was in regard to a material fact;
4) the false representation was made either knowingly or without belief in its truth or recklessly;

19

5) plaintiff reasonably relied on the misrepresented material fact; and
6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008); *see Hodge v. Craig*, 382 S.W.3d 325, 342 n.28 (Tenn. 2012). Under Tennessee law, "fraud [is] a generic term broad enough to encompass all acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." *Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989) (citing *Smith v. Harrison,* 49 Tenn. (2 Heisk.) 230, 243–44 (1870)). The cause of action "protects every person's legitimate expectations that he or she can reasonably rely on the representations of others when making decisions—especially business decisions." *Id.*

To defeat Defendants' motions to dismiss for failure to plead fraud, the Winstons only need to make short, plain, non-conclusory statements alleging facts that satisfy these elements. As to the first element, the Winstons have alleged numerous facts that Mr. Zaehringer misrepresented, including the amount of risk they were taking and whether their principal or interest were at risk. [Doc. 18, PageID 167–68]. Moving to the second and fourth elements, these elements are satisfied because statements made by Mr. Zaehringer were allegedly false when made, and Upstate Law Group confirmed their falsity by stating that the Winstons took on the risks of the contracts and Mr. Zaehringer knew why the federal pension contracts were in default. [Doc. 18, PageID 169].

The third element, that a representation was regarding a material fact, is an objective inquiry and a factual issue resolved by a jury. *Green v. Green,* 293 S.W.3d 493, 516–17 (Tenn. 2009). Here, the Winstons have presented several facts that a reasonable jury could determine are material facts, including the risk taken by the Winstons, the vulnerability of their principal, and

20

the lack of a secondary market for the contracts. [Doc. 18, PageID 167–69]. So, the third element is satisfied.

Next, the Winstons must show that their reliance was reasonable, the fifth element. The Winstons have said that they relied on the recommendations and assurances of Mr. Zaehringer, [*Id.* at PageID 166], but Mr. Zaehringer argues that they cannot satisfy the fifth element because that reliance was unreasonable considering the contracts signed by the Winstons contained discussions of risk. [Doc. 30, PageID 1088]. However, as noted above, the Court will not look beyond the pleadings at this time. At a later point, Mr. Zaehringer and the other Defendants may make this argument, but now is not the time. Therefore, the Winstons have pleaded the fifth element.

Last, the Winstons have alleged that they relied on these misrepresentations and that these misrepresentations led to their damages. [Doc. 18, PageID 173].

Separately, Defendants argue that the Winstons have failed to allege misrepresentation by omission. [Doc. 30, PageID 1089]. Defendant hinges this argument on whether the contracts were illegal under federal anti-assignment laws. [*Id.*]. But Defendants' arguments are based in factual differences between what the Winstons allege and what Defendants say happened based on facts outside the pleadings. [*Id.*]. Because the Winstons have alleged that the contracts were illegal, made factual allegations that could render them illegal, and alleged that Defendants knew that the contracts were illegal, the Winstons have provided facts needed to defeat a 12(b)(6) motion. [Doc. 18, PageID 172].

After discussing fraud, Mr. Zaehringer argues that the Winstons failed to allege gross negligence. To plead gross negligence, a plaintiff must first allege negligence. *Thrasher v. Riverbend Stables*, No. M200701237COAR3CV, 2008 WL 2165194, at *5 (Tenn. Ct. App. May

21, 2008). In Tennessee, a plaintiff shows negligence by establishing "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). In addition to pleading negligence, a plaintiff must show that the negligent act was "'a conscious neglect of duty or a callous indifference to consequences' or 'such entire want of care as would raise a presumption of a conscious indifference to consequences'" to plead gross negligence. *Thrasher*, 2008 WL 2165194, at *5 (quoting *Jones v. Tennessee Riders Instruction Program, Inc.*, No. M2006–01087–COA– R3CV, 2007 WL 393630, at *2 (Tenn. Ct. App. Feb. 5, 2007)).

The Winstons have failed to plead negligence from the beginning. They have not alleged that Mr. Zaehringer owed them a duty of care. Frankly, neither party seems to be arguing about negligence; they both cited cases about and argued the elements of negligent misrepresentation. Therefore, the Court will determine if the Winstons pleaded negligent misrepresentation.

In Tennessee, there are two types of negligent representation, one for parties with contractual privity and another for parties without contractual privity. *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). The pleadings indicate that the Winstons have alleged the cause of action for parties without contractual privity because they do not allege that they have a contract with Mr. Zaehringer himself, and, even if they do have contractual privity with Mr. Zaehringer, they claim the contracts they signed are *void ab inito*. [Doc. 40, PageID 1829]. The elements of negligent misrepresentation without contractual privity are:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
> (2) the defendant supplies faulty information meant to guide others in their business transactions; and
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*Robinson*, 952 S.W.2d at 427.

The Winstons satisfy the first element, whether the defendant was operating in his profession, by stating that he claimed to be an agent and employee of Annuity FYI, and he was paid with a salary and bonus structure. [Doc. 18, PageID 163]. Second, they alleged that Mr. Zaehringer gave them faulty information for their business transaction by giving them incorrect information regarding the nature of the federal pension contracts and the risks they were taking. [*Id.* at PageID 167–169]. Last, the Winstons alleged that they relied on the information provided to them when they made their decisions to purchase federal pension contracts through Mr. Zaehringer, who gave them incorrect information. [*Id.*]. Of course, at a later point in the litigation, Mr. Zaehringer and the other Defendants may show facts that contradict the allegations of the Winstons, such as their justifiable reliance on the information, but those arguments are premature at this time.

### 3. The Winstons satisfied the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure for their allegations of fraud.

Defendant Zaehringer also states that the Winstons failed to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. [Doc. 30, PageID 1084]. Rule 9(b) requires a party alleging that a defendant committed fraud to "state with particularity the circumstances constituting fraud, [but] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. The Sixth Circuit has interpreted this rule to mean that a party, "at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 830 (6th Cir. 2018), *cert. denied sub nom, Brookdale Senior*

*Living Communities, Inc. v. U.S. ex rel. Prather*, 139 S. Ct. 1323 (2019); *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

The Winstons' Third Amended complaint meets the Rule 9(b) requirements. In a single paragraph, the Winstons alleged that in or around November 2015, in an email, Mr. Zaehringer said:

> An individual who receives a federal pension, typically a military pension, would rather have a lump sum rather than the monthly stream of income. We have an exclusive contract to find an individual who needs income stream in exchange for a lump sum and essentially match up needs. Those individuals who own the pensions are only allowed to "sell" a maximum of ten years of pension payments. The federal government backs the pension, not an insurance company. For added protection for the purchaser, there is a life insurance [policy] on those individuals selling part of their pension to cover the purchaser should the seller die during the payout.

[Doc. 18, PageID 164–65]. Further, the Winstons have alleged that Defendants created a scheme to sell these contracts illegally, knowing that they were illegal and while making intentional misrepresentations, such as there was no risk, and that the Winstons were damaged by the misrepresentations. [*Id.* at PageID 166–170]. These allegations meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

### 4. <u>The Winstons pleaded an underlying tort for civil conspiracy; therefore, Mr. Zaehringer's grounds for dismissing the civil conspiracy claim must be denied.</u>

Mr. Zaehringer argues that the civil conspiracy claim against him must be denied because the Winstons did not plead an underlying tort. Mr. Zaehringer is correct in that a claim for civil conspiracy must have an underlying tort. *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). However, as stated above, the Winstons have pleaded two torts that could support a claim for civil conspiracy. Therefore, Mr. Zaehringer's motion on that point must be denied.

24

5. **Defendants have failed to establish that the federal pension contracts purchased by the Winstons are not securities governed by the Tennessee Securities Act.**

Next, Defendants argue that the Winstons' claims under the Tennessee Securities Act must fail as a matter of law because the Tennessee Securities Act does not cover the federal pension contracts. [Doc. 30, PageID 1079]. Mr. Zaehringer argues that the Winstons' contracts are fixed-rate annuities "for all intents and purposes" but does not provide any reasons as a matter of law that the federal pension contracts are annuities. [*Id.*]. Annuity FYI frames the issue a bit differently and simply says that the federal pension contracts are not securities under Tennessee law. [Doc. 32, PageID 1787].

The Tennessee Supreme Court has said that "an 'annuity' is a fixed amount directed to be paid absolutely and without contingency." *Sanborn v. McCanless*, 178 S.W.2d 765, 766 (1944). The alleged facts provided by the Winstons show that the federal pension income streams are not annuities based on this definition. The Winstons purchased the agreements, but they did not receive their fixed amount "absolutely." Further, as stated in Mr. Zaehringer's brief, there was a contingency—-the pensioner had to personally send a payment to Upstate Law Group. [Doc. 30, PageID 1072–73]. These allegations show that the federal pension contracts were not annuities. Mr. Zaehringer's conclusory statement that the federal pension contracts were annuities "for all intents and purposes" is unpersuasive. [*Id.* at PageID 1079].

In addition to not being annuities, based on the allegations in the Third Amended Complaint, the sale of the federal pension contracts is governed by the Tennessee Securities Act. Many types of contracts and financial instruments are governed by the Tennessee Securities Act, including "investment contracts." Tenn. Code Ann. § 48–1–102 (20)(A). Tennessee adheres to the *Hawaii Market Test*, to determine if a contract is an "investment contract." *King v. Pope*, 91

S.W.3d 314, 320–21 (Tenn. 2002). This test provides a broader definition of an investment contract than federal law. *See id.* at 324. The test has four elements:

> (1) An offeree furnishes initial value to an offeror, and
> (2) a portion of this initial value is subjected to the risks of the enterprise, and
> (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and
> (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.

*Id.* at 320–21.

The Winstons' allegations demonstrate that the federal pension contracts were investment contracts. The Winstons offered the money in their IRAs to Defendants in anticipation of being matched with a pensioner who needed a lump sum payment. [Doc. 18, PageID 165]. In return, the Winstons were to receive an income stream. [*Id.*]. A portion of this investment was subjected to the risk of the enterprise, i.e., whether the pensioners paid on the contract. [*Id.* at PageID 169]. Third, the Winstons' gave the initial value in expectation of profits as the result of Defendants being able to match the Winstons with a pensioner. [*Id.* at PageID 165]. Last, the Winstons had no right to control the decisions of the enterprise. When they tried to exert some amount of control by selling off their contracts, they were told that they could not. [*Id.* at PageID 168]. This means that the contracts, as described by the Winstons, are governed by the Tennessee Securities Act, and the Defendants' motions to dismiss claims under the Tennessee Securities Act are denied.

### 6. <u>The Court will not look outside the pleadings to determine if the Winstons released claims against Mr. Zaehringer.</u>

Last, Mr. Zaehringer requests that the Court look outside the pleadings to determine if the Winstons released Mr. Zaehringer from any and all claims arising from the transactions. [Doc. 30, PageID 1078]. As the Court already noted, it will not look outside the pleadings at this time to rule

on the motion to dismiss, especially considering the Winstons argue that the contracts are *void ab initio*. Therefore, the Court will not rule on this issue and Mr. Zaehringer may raise the issue again at a more appropriate time.

## IV.    Show Cause Orders

The Court has issued two Show Cause Orders in this case. [Docs. 53–54]. The Show Cause Orders ordered Defendants Kern-Fuller and Upstate Law Group to provide the citizenship of all Defendants to ensure this Court had subject matter jurisdiction. [Doc. 54]. They have done so and satisfied the Show Cause Order. [Docs. 55–56].

Per the Show Cause Orders, the Winstons were ordered to show good cause regarding their failure to return proof of service. [Docs. 53–54]. They responded by providing the proof of service for Annuity FYI. [Doc. 55–1]. They stated that they returned proof of service for Defendants Kern-Fuller, Upstate Law Group, and Zaehringer in state court before the case was removed. [Doc. 55, PageID 2236]. They have retained copies and volunteered to file the proof of service. [*Id.*]. The Winstons are ORDERED to file the proof of service for Defendants Kern-Fuller, Upstate Law Group, and Zaehringer within thirty days of the entry of this Order.

## V.    Conclusion

For the above stated reasons, the Court rules as follows:

- Defendant Richard Zaehringer's Motion to Dismiss, [Doc. 29], is GRANTED in part and DENIED in part, and Plaintiffs' claim of gross negligence is DISMISSED;

- Defendants Candy Kern-Fuller and Upstate Law Group's Motion to Dismiss, [Doc. 31], is DENIED;

- Defendant Annuity FYI's Motion to Dismiss, [Doc. 33], is DENIED;

- Plaintiffs' Motions for Extensions titled Agreed Leave to Extend the Time for Plaintiffs to Respond to the Motions to Dismiss of Richard Zaehringer, Candy Kern-Fuller and Upstate Law Group, LLC, and Annuity FYI, [Docs. 37–38], are GRANTED;

- Defendants Candy Kern-Fuller and Upstate Law Group's Response to the Show Cause Order, [Doc. 57], establishes subject matter jurisdiction and the Show Cause Order as to them is satisfied;

- Plaintiffs' Response to the Show Cause Order satisfied the requirements of returning proof of service for Defendant Annuity FYI, [Doc. 55], and they are ORDERED to return proof of service for Defendants Candy Kern Fuller, Upstate Law Group LLC, and Richard Zaehringer within thirty days of the entry of this Order.

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE